1

2

3

4

5

6                        UNITED STATES DISTRICT COURT

7                             DISTRICT OF NEVADA

8                                      * * *
                                         )
9   STERLING A., a minor, by his Guardians Ad )
    Litem, KEVIN ANDREWS and HEATHER )
10  ANDREWS,                             )          3:07-CV-00245-LRH-RJJ
                                         )
11              Plaintiffs,              )
                                         )          ORDER
12  v.                                   )
                                         )
13  WASHOE COUNTY SCHOOL DISTRICT,       )
                                         )
14              Defendant.               )
    _____)
15          Presently before the court is Plaintiffs Sterling A., et al.'s (collectively, "Plaintiffs")

16  Opening Brief on Appeal (#34[1]).  Defendant Washoe County School District ("WCSD") has filed

17  an answer (#35), to which Plaintiffs replied (#38).

18  I.      Facts and Procedural History

19          This is a civil action brought pursuant to the Individuals with Disabilities Education Act

20  ("IDEA"), 20 U.S.C.§ 1400 *et seq.*  Sterling A. ("Sterling") was born on October 14, 2003, to

21  Kevin and Heather Andrews.  (Admin. R. at 224.)  Soon after his birth, Sterling was diagnosed

22  with profound bilateral hearing loss.  *Id.*  On October 15, 2004, doctors implanted a Cochlear

23  Americas Nucleus 24 Contour Advance implant into his right ear.  *Id.*

24          On April 20, 2004, the Brea Olinda Unified School District in California determined that

25

26
    _____
        [1] Refers to the court's docket number.

Sterling was eligible for IDEA services.  (Admin. R. at 224.)  Pursuant to an Individualized Family Service Plan ("IFSP"), Sterling received IDEA services in California from April 20, 2004, through October 13, 2006.  *Id.*

On October 13, 2006, the Brea Olinda Unified School District developed an Individualized Education Plan ("IEP") for Sterling ("California IEP").  (Admin. R. at 225.)  From October 14, 2006, through November 16, 2006, Sterling received the IDEA services provided for in the IEP, including one-on-one Deaf and Hard of Hearing ("DHH") services and speech and language services at Plaintiffs' home.  *Id.*

On October 30, 2006, Plaintiffs notified WCSD that they would be moving to Reno, Nevada and requested a meeting to discuss Sterling's IEP.  (Admin. R. at 225.)  On November 17, 2006, Plaintiffs relocated to Reno, Nevada, and on November 20, 2006, they met with representatives of WCSD to discuss Sterling's potential for receiving IDEA services in Nevada.  *Id.* At the meeting, WCSD adopted an interim IEP.  (Admin. R. at 23:8-11.)

Pursuant to Nevada law, the interim IEP was to last for approximately thirty (30) days, from November 27, 2006, through December 21, 2006.  (Admin. R. at 30:23-25.)  During this thirty (30) day period, WCSD was to determine Sterling's eligibility for IDEA benefits in the state of Nevada. (Admin. R. at 31:3-7.)  Upon a determination that Sterling was eligible, WCSD would create an annual IEP.  (Admin. R. at 31:6-7.)  WCSD did not question Sterling's eligibility for IDEA benefits in the state of Nevada.  (Admin. R. at 31:8-10.)

The primary difference between the California IEP and the interim IEP was the location of the services to be provided.  (Admin. R. at 23:19-25.)  The interim IEP stated that WCSD would provide speech and language services at Sterling's local school, Hunsberger Elementary.  Plaintiff's do not object to the speech and language service being provided at the school.  (Admin. R. at 226.) Instead, the dispute in this case arose out of the interim IEP's provision for DHH services at Sterling's local school, rather than at Plaintiffs' home.  (Admin. R. at 23:19-25.)  Under the

2

1   California IEP, DHH services had been provided at Plaintiffs' home.  (Admin. R. at 225.)

2         In reviewing the California IEP and creating the interim IEP, WCSD concluded that

3   "providing [speech and language and DHH] services in an educational setting would be the most

4   appropriate." (Admin R. at 24:14-14.)  To make this determination, WCSD reviewed the

5   California IEP and contacted the teacher who provided services to Sterling in California.  (Admin.

6   R. 24:16-17.)  The teacher indicated that she provided DHH services in Sterling's home because

7   Sterling was enrolled at a parochial preschool, for convenience, and because the home offered "no

8   real distractions." (Admin. R. at 324.)  Nonetheless, she noted that if it was requested or if the

9   home environment was not working out, she would move the DHH services to the school.  *Id.*

10        In addition, WCSD considered its need for access to peer models for evaluation purposes,

11  and Hunsberger Elementary would have allowed WCSD to access appropriate language models.

12  (Admin. R. at 25:1-7.)   Finally, it was WCSD policy to provide home services only to medically ill

13  children.  (Admin. R. at 398.)  Thus, WCSD declined to provide DHH services at Plaintiff's home.

14  *See* (Admin. R. at 394.)  Instead, WCSD offered to provide DHH services at Hunsberger

15  Elementary three times per week for forty-five minutes per session.  (Admin. R. at 393.)

16        In accordance with the interim IEP, Sterling began receiving speech and language services

17  at Hunsberger Elementary one time per week for thirty minutes.  However, on December 13, 2006,

18  Plaintiffs informed WCSD that they found the room chosen for Sterling's weekly one-on-one

19  sessions inappropriate.  (Admin. R. at 296-97.)  For example, Plaintiffs noted that the room posed

20  safety concerns in the form of exposed electrical outlets and free standing objects.  *Id.*  Moreover,

21  Plaintiffs noted that the room was not soundproofed, and there were audible and distracting noises

22  entering the room.  *Id.*  In addition, Plaintiff's were concerned that the florescent lights in the room

23  might interfere with Sterling's cochlear implant.  *Id.*  As a result of Plaintiffs' concerns, on

24  December 16, 2006, WCSD provided a new room.  *Id.*

25        Although Plaintiffs took Sterling to Hunsberger Elementary for speech and language

26

3

therapy, they refused to take him to the school for DHH therapy.  Instead, following the meeting on

November 20, 2006, Plaintiffs contracted with Carrie Austin, a private provider, for DHH services

at Plaintiffs' home.  (Admin. R. at 225.)  On November 22, 2006, Plaintiffs asked WCSD to

reimburse them for the out-of-pocket expenses incurred in hiring Ms. Austin.  (Admin. R. at 225.)

From November 20, 2006, through January 11, 2007, Ms. Austin conduct twenty-two (22) one-

hour DHH sessions.  (Admin. R. at 302.)   She charged $85.00 per hour.  (Admin. R. at 302.)

Because Plaintiffs have refused to make Sterling available for DHH services at Sterling's

local school, WCSD has been unable to complete the assessments of Sterling necessary to

determine his eligibility for special education services under Nevada law.  As a result, at the time of

the hearing before the HO, WCSD had not developed an annual IEP for Sterling.  It is not clear

whether WCSD has developed an annual IEP for Sterling to date.

As a result of WCSD's refusal to provide DHH services in their home, on November 30,

2006, Plaintiffs requested a due process hearing.  (Admin. R. at 187.)  The due process complaint

alleged that, by refusing to replicate the California IEP with regard to the at-home DHH services,

WCSD had failed to provide Sterling a Free and Appropriate Public Education ("FAPE") in

violation of IDEA.  (Admin. R. at 188.)  Plaintiffs also requested reimbursement for the costs of

contracting with the private provider of DHH services (Admin. R. at 189.)

On January 17, 2007, the Hearing Officer ("HO") conducted a due process hearing.  On

February 9, 2007, the HO issued her decision, concluding that "despite the change in the physical

location of the [DHH] services, [WCSD] offered comparable DHH services in a distraction-free

environment." (Admin. R. at 285.)  Because it found the interim IEP to provide services

comparable to the California IEP, the HO concluded that the interim IEP did not deny Sterling a

FAPE.  *Id.*

Plaintiffs appealed the HO's decision.  (Admin. R. at 523.)  On April 25, 2007, a State

Review Officer ("SRO") affirmed.  (Admin. R. at 476-84.)  On May 22, 2007, Plaintiffs initiated

1   this appeal.

2   **II. Legal Standard**

3          IDEA was enacted "to ensure that all children with disabilities have available to them a free

4   appropriate public education that emphasizes special education and related services designed to

5   meet their unique needs and prepare them for further education, employment, and independent

6   living." 20 U.S.C. § 1400(d). "An appropriate public education does not mean the absolutely best

7   or potential-maximizing education for the individual child . . . The states are obliged to provide a

8   basic floor of opportunity through a program individually designed to provide educational benefit

9   to the handicapped child." *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1524 (9th Cir. 1994) (citations

10  and internal quotations omitted).

11         In case of a dispute between the school district and the parents, IDEA permits the parents of

12  disabled children to "present a complaint . . . with respect to any matter relating to the

13  identification, evaluation, or educational placement of the child, or the provision of a free

14  appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The statute provides that a

15  parent who submits such a complaint "shall have an opportunity for an impartial due process

16  hearing." 20 U.S.C. § 1415(f)(1)(A). IDEA further permits any party aggrieved by the finding and

17  decision in the due process hearing to file a civil action in state or federal court. 20 U.S.C. §

18  1415(i)(2). In any action seeking judicial review of the administrative decision, "the court . . . (i)

19  shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the

20  request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant

21  such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(C).

22         Judicial review of a state hearing officer's decision involves two steps. *Smith*, 15 F.3d at

23  1524. "First, the court must determine whether the rigorous procedural requirements of IDEA have

24  been met. Second, the court must determine whether the state has met the substantive component

25  of IDEA - the requirement that the state provide an 'appropriate' education." *Id*. (citing *Bd. of*

26

1   *Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester County v. Rowley*, 458 U.S. 176, 206-07
2   (1982)).

3          The standard of review to be conducted pursuant to IDEA has been described as a
4   "modified *de novo* review." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270
5   (3d Cir. 2003); *see also Amanda J. v. Clark County Sch. Dist.*, 267 F.3d 877, 887 (9th Cir. 2001)
6   ("Complete *de novo* review . . . is inappropriate."). This modified *de novo* review requires the
7   district court to give "due weight" to the hearing officer's decision. *Capistrano Unified Sch. Dist.*
8   *v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995). This court cannot substitute its notion of sound
9   educational policy for those of the school authorities. *Ojai Unifed Sch. Dist. v. Jackson*, 4 F.3d
10  1467, 1472 (9th Cir. 1993). The amount of deference due to state educational agencies is a matter
11  for discretion of the courts. *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th Cir.
12  1987). However, "the amount of deference bestowed upon the hearing officer is increased where
13  her findings are 'thorough and complete.'" *Adams v. State of Oregon*, 195 F.3d 1141, 1145 (9th
14  Cir. 1999) (quoting *Smith*, 15 F.3d at 1524). "The burden of proof in an administrative hearing
15  challenging an IEP is properly placed upon the party seeking relief." *Schaffer v. Weast*, 546 U.S.
16  49, 67 (2005).

17  **III.   Discussion**

18         This appeal requires the court to determine whether a preponderance of the evidence
19  supports the following conclusions of the HO and the SRO: (1) the interim IEP provided services
20  comparable to the California IEP; (2) the interim IEP provided Sterling with a FAPE; and (3)
21  Plaintiffs were not entitled to reimbursement for the cost of employing the private DHH service
22  provider. The court considers each of these issues below.

23         **A.   "Comparable" Services**

24         Pursuant to IDEA, where a student receiving IDEA services transfers interstate, the local
25  education agency in the new state must provide the student with a FAPE, including services

26                                                    6

1    comparable to those provided in the original state. 20 U.S.C. § 1414(d)(2)(C)(i)(II).  Specifically, §

2    1414(d)(2)(C)(i)(II) provides as follows:

3       In the case of a child with a disability who transfers school districts within the same
        academic year, who enrolls in a new school, and who had an IEP that was in effect in

4       another State, the local educational agency shall provide such child with a free
        appropriate public education, including services comparable to those described in the

5       previously held IEP, in consultation with the parents until such time as the local
        educational agency conducts an evaluation pursuant to subsection (a)(1), if determined

6       to be necessary by such agency, and develops a new IEP, if appropriate, that is
        consistent with federal and State law.

7

8    *Id.*  The applicable state law, Nevada Administrative Code section 388.263(2), mirrors the federal

9    statute.

10       Under Nevada Administrative Code section 388.275, while the school district determines

11   whether a child who was eligible for special education services in another state is eligible to receive

12   special education services in Nevada, the school district may develop an interim IEP for the child.

13   Nev. Admin. Code § 388.275(1).  If the school district determines that the child is eligible to

14   receive special education in Nevada, within thirty (30) days of the development of the interim IEP

15   the school district must develop an annual IEP.  Nev. Admin. Code § 388.275(2).

16       This dispute centers around the meaning of "comparable" services, as used in 20 U.S.C. §

17   1414(d)(2)(C)(i)(II).  Plaintiffs argue that to provide services "comparable" to those in the

18   California IEP, WCSD must provide DHH services in the home, as the California IEP did.  In

19   contrast, WCSD maintains that "comparable" services means similar services, and that nothing

20   requires it to provide in-home DHH therapy where it can provide substantially the same therapy at

21   Sterling's local school.  Agreeing with WCSD, the HO concluded that "comparable" services

22   means similar services rather than identical services.  (Admin. R. at 287.)  Based on the evidence

23   before it, the HO found WCSD had provided comparable services because only the location, not

24   the substance, of the DHH services had changed.  (Admin. R. at 285.)  The SRO confirmed the

25   HO's reasoning and conclusion. (Admin. R. at 476-84.)

26

1    Where the meaning of a statute is plain and unambiguous, the clear language of the statute

2    controls. *United States v. Maria-Gonzalex*, 268 F.3d 664, 668 (9th Cir. 2001) (*citing Aragon-Ayon*

3    *v. I.N.S.*, 206 F.3d 847, 851 (9th Cir. 2000)).  In addition, in construing statutory language, courts

4    should defer to the position and interpretation of the Office of Special Education Programs of the

5    Department of Education ("OSEP"), the agency responsible for monitoring and administering the

6    IDEA. *Ms. S. v. Vashon Island School District*, 337 F.3d 1115, 1134 (9th Cir. 2003) (*citing Honig*

7    *v. Doe*, 484 U.S. 305, 325 n.8 (1988)), *superceded by statute on other grounds*, IDEA, Pub. L. No

8    105-17, 111 Stat. 81, *as recognized in M.L. v. Fed. Way Sch. Dist.*, 341 F.3d 1052, 1063 n.7 (9th

9    Cir. 2003).

10    In 71 Fed. Reg. 46540 (Aug. 14, 2006), OSEP notes that while several commentators

11    requested clarification of the meaning of "comparable" services, clarification was not necessary

12    because "the Department interprets 'comparable' to have the plain meaning of the word, which is

13    'similar' or 'equivalent.'" *Id.* at 46681.  When a child transfers to a new public agency from

14    another state, "comparable services means services that are 'similar' or 'equivalent' to those that

15    were described in the child's IEP from the previous public agency, as determined by the child's

16    newly-designated IEP Team in the new public agency." *Id.*

17    Both the HO and the SRO deferred to OSEP's conclusion that "comparable" services

18    plainly means "similar" or "equivalent" services.  Similarly, this court finds that "comparable"

19    services within the meaning of 20 U.S.C. § 1414(d)(2)(C)(i)(II) means that, in the interim IEP,

20    WCSD needed to provide services that were "similar" or "equivalent" to those provided for in the

21    California IEP.  Thus, WCSD was not obligated to adopt the California IEP in its exact form.  All

22    that the IDEA requires is that the interim IEP be similar or equivalent to the California IEP.

23    A comparison of the interim IEP and the California IEP indicates that the only difference

24    between the two IEPs is the location of the DHH services.  Thus, the issue is whether, by changing

25    the location of DHH services, WCSD nonetheless provided similar or equivalent services in the

26

8

interim IEP.

Plaintiffs argue that DHH services at Sterling's local school are substantially different than DHH services at their home.  They note that their home has been altered to ensure that it is acoustically sound.  Carrie Austin, the private DHH teacher hired on November 20, 2006, testified that the transition from home DHH teaching to in-school DHH instruction might hamper Sterling's progress (Admin. R. at 110:12-111:10.)  She also testified to Sterling's comfort in the home setting, noting that their home provides few distractions for Sterling, enabling him to fully concentrate on the tasks before him, and to the importance of having backup equipment readily available.  (Admin. R. at 112:16-114:12.)  Based on this information, Ms. Austin concluded that Sterling could not receive comparable DHH service at the school.  (Admin. R. at 118:21-119:13.)[2]

Plaintiffs also argue that the school setting offered by WCSD is inappropriate for DHH therapy.  They note safety, acoustic, and lighting concerns with the room offered by WCSD.  In particular, Plaintiffs note that the fluorescent light might interfere with Sterling's cochlear implant. They cite to the implant's user manual, which states that fluorescent lighting may interfere with the device, causing buzzing sounds or distorted speech.  (Admin R. at 305.)  Plaintiffs assert that this setting could interfere with  Sterling's DHH therapy by distracting him and making it difficult for him to hear properly.  Plaintiffs first expressed these concerns after bringing Sterling to the elementary school for speech and language therapy on December 13, 2006.  (Admin. R. at 296.) Three days later, WCSD located a different room in which to conduct its sessions with Sterling.  *Id.*

Plaintiffs argue that WCSD should have provided a room appropriate for DHH therapy on

---

[2] The HO determined that Ms. Austin's testimony was less credible than the testimony of the other WCSD employees.  In particular, the HO noted Ms. Austin's continuing pecuniary interest in the outcome of the proceedings and her failure to read the interim IEP or the latest California IEP.  The SRO accepted the HO's credibility determination.  Because the HO is in the best position to make determinations regarding a witness's credibility, this court defers to the HO's conclusion with regard to the weight due to Ms. Austin's testimony. Nonetheless, the court notes that it also recognizes Plaintiffs' arguments on appeal, particularly those challenging Ms. Austin's pecuniary interest in the outcome of the proceedings.  The court considers these arguments in weighing Ms. Austin's testimony and the conclusions of the HO.

9

November 20, 2006, not on December 16, 2006, only days before the interim IEP was to expire.

However, on November 20, 2006, immediately after the implementation of the interim IEP,

Plaintiffs unilaterally hired a private DHH service provider to come to their home and assist

Sterling.  Plaintiffs did not even consider WCSD's offered room until December 13, 2006, when

they first brought Sterling to the elementary school for speech and language therapy.  Within three

days of Plaintiffs' complaint, WCSD provided a new, appropriate room.  Thus, upon hiring the

private DHH service provider, Plaintiffs appear to have immediately rejected WCSD's offer to

provide DHH services at the elementary school.  In light of this rejection, Plaintiffs' argument

regarding the appropriateness of the room is unpersuasive.  Notably, upon WCSD's decision to

offer DHH services at the elementary school, Plaintiffs could have immediately, or within a

reasonable amount of time, gone to the school to review the room.  If they were dissatisfied with

the room, WCSD would have had the opportunity to find an appropriate room in which to provide

Sterling with DHH services throughout the entirety of the interim IEP.

In opposition, WCSD argues that the interim IEP provided services comparable to those

offered in the California IEP, and that no special education reason required them to provide in-

home DHH therapy.  A WCSD DHH teacher testified that the goals and substance of the interim

IEP were identical to the California IEP.  (Admin. R. at 99:2-14.)  The only difference between the

two was the location of DHH services.  *Id.*  In addition, Sheri Bilewitz, Sterling's DHH teacher in

California, indicates that she provided DHH services at Plaintiffs' home "out of convenience for

both mom and myself as well as the fact that he was progressing in the home and there were no real

distraction."  (Admin. R. at 324.)  She also added that "Sterling would progress in any environment

as long as it was quiet and non-distracting."  *Id.*  Further, WCSD maintains that providing DHH

services at the elementary school would provide additional benefits, including opportunities for

peer modeling, reciprocal play, group interaction, and role modeling.  (Admin. R. at 71:9-18;

99:23-100:3.)

1   After careful review of the parties' arguments, the evidence, and the administrative

2   decisions below, the court finds that a preponderance of the evidence supports the HO and SRO's

3   conclusion that the in-school DHH services offered in the interim IEP were similar or equivalent to

4   the home-based DHH services provided for in the California IEP.  Although the conditions at

5   Sterling's local school may not have been ideal, IDEA does not require a school district to provide

6   the best available or optimal educational setting.  *Smith*, 15 F.3d at 1524 (citations and internal

7   quotations omitted).  Instead, it requires the school district to provide a "floor of opportunity" to

8   give educational benefits to the handicapped child.  *Id.*  The evidence indicates that while the exact

9   location of the services was different, the substance and goals of the DHH services was the same.

10  In light of this substantial similarity in the substance of the DHH services, the additional benefits

11  provided by DHH services at the elementary school, and the deference due to local and state

12  officials' educational policy determinations, the court finds that the interim IEP provided services

13  comparable to those provided in the California IEP.

14  **B.  Free Appropriate Public Education**

15  Although the court has concluded that the interim IEP provided services comparable to the

16  California IEP, the inquiry does not end here.  Instead, the court must next considers whether the

17  interim IEP provided Sterling with a FAPE.  Generally, the inquiry into determining whether a

18  child has received a FAPE is twofold.  *Rowley*, 458 U.S. at 206.  First, the court must determine

19  whether the state has complied with the procedural requirements of IDEA.  *Id.*  Second, the court

20  must determine whether "the [IEP] . . . was reasonably calculated to enable the child to receive

21  educational benefits."  *Id.* at 207.  Here, Plaintiffs do not allege any procedural flaws in the

22  administrative decision-making process followed below.  As a result, this court proceeds directly to

23  consider whether WCSD has met the substantive component of IDEA.  Specifically, the court

24  considers whether the interim IEP was reasonably calculated to enable Sterling to receive

25  educational benefits.

26

11

1    Congress enacted IDEA to ensure that children with disabilities have access to a free

2  appropriate public education.  20 U.S.C. § 1400(D).  Nonetheless, "[a]n appropriate education does

3  not mean the absolutely best or potential-maximizing education for the individual child."  *Smith*, 15

4  F.3d at 1524 (citations and internal quotations omitted).  Instead, states must provide a "basic floor

5  of opportunity through a program individually designed to provide educational benefit to the

6  handicapped child."  *Id.*  A school district provides a FAPE "by providing personalized instruction

7  with sufficient support services to permit the child to benefit educationally from the instruction."

8  *Rowley*, 458 U.S. at 203.

9    After careful consideration of the record on appeal and the cited evidence, and recognizing

10  the deference due to state and local education agencies in forming educational policy, the court

11  finds that the interim IEP was reasonably calculated to enable Sterling to receive educational

12  benefits.  As noted, IDEA requires the school district to provide a "basic floor of opportunity," not

13  the absolutely best educational setting for the child.  As discussed above, the interim IEP called for

14  one-on-one DHH therapy, set the same goals as the California IEP, and was virtually identical in

15  substance to the California IEP.  Moreover, the court has found that the interim IEP provides

16  services comparable to the California IEP, and this is the only basis upon which Plaintiffs challenge

17  the interim IEP as denying Sterling a FAPE.  Accordingly, the court finds that the interim IEP

18  provided Sterling with a FAPE.

19    **C.  Reimbursement**

20    Finally, Plaintiffs challenge the HO and SRO's denial of their right to reimbursement for

21  the payments made to the private DHH services provider.  If a school district denies a student a

22  FAPE, the court may order the school district to provide compensatory education to the student.

23  *Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1496-97 (9th Cir. 1994).  Having

24  found that the interim IEP met the requirements of IDEA and provided Sterling with a FAPE, the

25  ///

26

1    court finds that Plaintiffs are not entitled to reimbursement for the private services.

2            IT IS THEREFORE ORDERED that Plaintiffs' Appeal (#1) is hereby DENIED.

3            The final decision of the State Review Officer is AFFIRMED.

4            IT IS SO ORDERED.

5            DATED this 10th day of November, 2008.

6

7            _____

8            LARRY R. HICKS
             UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

13